IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 03-00225 DAE |
| | ) |
| Plaintiff, | ) MEMORANDUM OF LAW |
| | ) |
| vs. | ) |
| | ) |
| DOUGLAS RYCHENER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF LAW**

I.   **FACTUAL BACKGROUND**

   A.   **General Background and Present Status.**

   In the early morning hours of April 23, 2003, officers of the Hawaii County Police Department (HCPD), Kona District, executed a search warrant upon the home of Douglas and Madeline Rychener. All family members were asleep, including the Rychener's five year old daughter, Vanity. The search uncovered, *inter alia,* a .22 caliber rifle, some .22 caliber cartridges, a small, personal-use amount of marijuana, and, from within a backpack, several mini ziplock bags with crystalline residue, and other drug paraphernalia. The .22 caliber rifle was found, unloaded, in a closed cabinet inside a workshop area that was locked with a padlock.

The HCPD had also obtained a search warrant for a "black fanny pack" presumed to be at the Rychener home. *See* Exhibit A. However, there was no black fanny pack and that warrant remained unexecuted.

At the same time, on the same day, HCPD simultaneously executed three other search warrants in Mr. Rychener's neighborhood, the Naalehu area of the K'au District. All four of the April 23, 2003, warrants were based upon information provided by the same confidential informant, Gerald Fontes.[1] In addition to the Rychener home, search warrants were also executed on the neighboring homes of John Roddy, Ed and Sue-Mei Billman, and Herilynn Cajugal.

Based upon the evidence seized from Mr. Roddy's home, Mr. Roddy was indicted in federal court for user in possession of a firearm. He is presently pending trial NEW DATE. Mr. Billman's case is pending in State court. Mrs. Rychener was indicted in State court where she faces charges of possession of drug paraphernalia. It presently appears she will receive a one year deferred acceptance of guilt plea and that the charge will eventually be dismissed. The cases against Ms. Sue-Mei Billman and Ms. Herilynn Cajugal have evidently been dismissed. Thus, the only two cases that were federalized after the execution of the State search warrants were those of Mr. Roddy and Mr. Rychener. The federal nexus is possession of a gun.

---

[1] The identity of the informant was provided by the AUSA in the instant case.

2

The Naalehu district of Ka'u is small. In the instant case, all of the recipients of the search warrants and the confidential informant have known each other for years. In the Naalehu community, for example, it is well-known that the informant has a long-term crush on the wife of Mr. Rychener, and that he hopes to make a play for her while Mr. Rychener on O'ahu fighting his case. *See* Declaration of Madelyn Rychener, attached as Exhibit G. (It is also known that the other federal defendant in this sweep, Mr. Roddy, has been at odds with the informant for a long time; indeed the informant was not even allowed on Mr. Roddy's property. This makes the informant's information concerning Mr. Roddy appear to be vengeance-based.) Nonetheless, none of this information tending to show that Mr. Fontes was not impartial and had motive to lie about Mr. Rychener as well as Mr. Roddy, which was most certainly known to the local police, ever found its way into the affidavit in support of the warrants presented to the judge.

### B. Specific Paragraphs of Search Warrant.

What follows is a recitation of facts as they appear in the "Confidential Informant" section of the affidavit in support of the search warrant. For ease of review, Rychener has numbered the paragraphs, although they are not numbered in the original affidavit. The page numbers on the bottom right of the search warrant and affidavit are the original Bates numbering system provided by the U.S. Attorney in the discovery

material given to Mr. Rychener. The original affidavit in support of the warrant is attached as Exhibit A. The numbered-paragraph affidavit is attached as Exhibit B.

By no means are these facts as Rychener believes them to be, as Rychener will prove by a preponderance of the evidence. As the Court will shortly see, Rychener's version of the truth is supported by both evidence seized from the scene as well as witness testimony. The version of events as laid out in the affidavit is not.

Moreover, Rychener has examined the affidavit in support of the search warrant in Mr. Roddy's case, Cr. No. 03-00224 HG which was executed on the same day as Mr. Rychener's search warrant. *See* Exhibit C. In both instances, the confidential informant, Gerald Fontes, provided false and inaccurate information. The errors and omissions in the Roddy affidavit should be considered when the Court reviews the credibility of the shared confidential informant in the instant case, as well as when the court reviews whether the HCPD recklessly omitted relevant facts in its preparation of the affidavit in support of the search.

Paragraphs 2 and 3: These paragraphs contain the statement that Officer Stanley Haanio, the affiant, has received "truthful information" from the informant on "at least six (6) occasions regarding drug activities within the Ka'u area in the previous ten days."

Paragraph 4: In this paragraph, the informant relays that "Douglas Rychener is a user/distributor of crystal methamphetamine "ice" in Naalehu." It also

states that Officer Stanley Haanio has "corroborated said information" through speaking with a detective/sergeant with the HCPD, Detective Ernest Saldua.  Officer Haanio states he corroborated the information with "anonymous complaints received of suspected drug activity occurring at RYCHENER's residence."[2]

   Paragraph 7: According to the confidential informant, he has purchased "ice" in the past from Rychener in "excess of ten times."  (The equivalent paragraph in the Roddy affidavit states in "excess of twelves times.")

   Paragraph 8:  In this paragraph, the confidential informant claims that Rychener "keeps the narcotics in a small cookie can in his residence and/or holds small packets of crystal methamphetamine on his person concealed in his clothing pockets or a black fanny pack."

   Paragraph 9: The informant explains that he is familiar with the appearance of crystal methamphetamine to include the various forms of packaging for distribution.

   Paragraph 10:  Officer Haanio met with the informant some time within five days prior to the writing of the affidavit, but at an exact date and time undisclosed in the affidavit.  Detective Saldua was also present.  According to this paragraph, the

---

[2] The identical claim was made in the Roddy affidavit.  ["That Officer Haanio has corroborated said information through speaking with Detective Ernest Saldua of the Kona Vice Section and also anonymous complaints received of suspected drug activity occurring at John RODDY's residence."] *See* Exhibit C.

informant was met at a "pre-arranged location," and he and his "mode of transportation," were searched for narcotics. None were found.

Paragraph 11: Det. Haanio maintained surveillance on the informant as he left the secret location and until he arrived at Rychener's residence. Det. Haanio and Det. Saldua then followed the informant and met at a pre-arranged location. At that time, "the informant turned over a small ziploc cellophane baggie containing crystalline substance" to Det. Haanio.

Paragraphs 13 and 14: The confidential informant tells Officer Haanio that the crystalline substance was "ice" that he had "obtained" from Rychener at Rychener's residence.

Paragraph 16: The confidential informant describes the residence to the officer and Det. Saldua confirms the address.

Based upon this affidavit, Third Circuit district court judge Joseph P. Florendo issued two State warrants: a warrant to search Mr. and Mrs. Rychener's home, to include all attics, basements, rooms, garages, outbuildings, storage sheds, vehicles, garbage cans, containers, and the surrounding yard located within the property boundaries; and a warrant to search a black fanny pack. Rychener herein challenges the veracity and validity of the affidavit to the search warrant pursuant to Franks and its progeny.

## II.  ARGUMENT

Pursuant to Franks v. Delaware, 438 U.S. 154 (1978), a defendant can attack the validity of a warrant by alleging that the affidavit contains false statements. As stated in Franks:

> Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment

Id. at 165. Under Franks, a defendant must satisfy a two-pronged test to obtain an evidentiary hearing. First, a defendant must make a "substantial preliminary showing" that the affidavit contains actual falsity, and the falsity either was deliberate or resulted from reckless disregard for the truth. Id. at 171. However, at this stage clear proof of deliberate or reckless misstatements or omissions is not required in order to obtain an evidentiary hearing. All that is required is a "substantial showing."

The second prong of the Franks test requires a court to find that the challenged statements are necessary to a finding of probable cause, i.e., if exclusion or addition of an omitted fact would leave the affidavit with insufficient content to establish probable cause. Id. at 171-72.

In dealing with both material misstatements in the affidavit as well as material omissions, the Ninth Circuit has held that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains

7

deliberate or reckless omissions of facts that tend to mislead.  See United States v. Ippolito, 774 F.2d 1482, 1486-87 (9th Cir. 1985); United States v. Stanert, 762 F.2d 775, 780-81 (9th Cir. 1985).  Therefore, when applying the Franks analysis here, two separate alterations must be made:

> (1) the Court must delete the falsity from the original affidavit; and
>
> (2) then insert the omissions which misled the magistrate.

Ippolito, 774 F.2d at 1487 n.1.  However, some courts have concluded that once a reviewing court finds a search warrant affidavit to be dishonest or reckless, suppression is appropriate under Leon regardless of whether or not the misrepresentation or omission would be material under Franks.  See United States v. Boyce, 601 F. Supp. 947 (D. Minn. 1985).

It is clear is that there is no "good faith" exception to the Franks doctrine; a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid. United States v. Leon, 468 U.S. 897, 914 (1984); Mills v. Graves, 930 F.2d 729, 733 (9th Cir. 1991).  Moreover, misstatements or omissions in an affidavit made by any government official justifies a Franks hearing and the invalidation of a search warrant even if the affiant did not know about it.  United States v. DeLeon, 979 F.2d 761 (9th Cir. 1992); United States v. Johns, 851 F.2d 1131, 1134 n.1 (9th Cir. 1988).  Therefore, if, after a hearing, a defendant has established by a preponderance of the evidence that the false statement was included intentionally or with reckless disregard for the truth, and the

false statement was necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded from trial. Franks, 438 U.S. at 155.

Here, Rychener can demonstrate that the affidavit in support of the search warrant contains false statements, statements in reckless disregard for the truth, and material omissions of fact which could mislead the judge. Moreover, these errors go to the heart of probable cause in the warrant and thereby require this Court to both grant an evidentiary hearing and then to strike the warrant as invalid.

Paragraphs 2 and 3: Rychener submits that this information is self-validating and worthless to the judge. Officer Haanio does not tell the judge how he has *verified* that the informant gave him "truthful information" on "at least six occasions regarding drug activities in the previous ten days." There are no police reports confirming this allegedly truthful information. There are no allegations that this informant has been previously and successfully used to obtain arrests, search warrants, or convictions. *Compare* United States v. Reeves, 210 F.3d 1041, 1045 (9th Cir. 2000)("[t]his affidavit had more than mere reliance on the informant's word. There as also the factor that in the affidavit the affiant indicated that this informant had previously provided information that led to three other investigations and arrests.") Rychener requests the government back up its claim that the informant previously provided truthful information at least six times in the ten days prior to the execution of the warrant, with

specific and detailed information. He submits that as a matter of law, the fact the informants previous information has never led to arrests and convictions makes it suspect.

In addition, Officer Haanio neglects to inform the reviewing judge of the informant's criminal history which includes thirteen misdemeanor convictions, including convictions for promoting detrimental drugs, resisting arrest, driving under the influence, and contempt of court. *See* Exhibit D. In addition, Fontes' wife obtained a restraining order against him in which she alleged violence, death threats and drug addiction ("when high he is very nice, when he comes down he gets very mean.") *See* Exhibit E.

Moreover, Rychener in good faith believes the informant was arrested in 2002 for *dealing* methamphetamine, and in 2003 for assaulting another drug dealer with a taser gun. Mr. Fontes' cooperation appears to have commenced shortly after the taser arrest. These arrests were witnessed by others in the Naalehu community. It appears the informant began cooperating to "work off" the taser and methamphetamine arrests. Officer Haanio also neglects to inform the reviewing judge that the informant is a drug dealer in the Naalehu area; that indeed he supplies the Rycheners' with their methamphetamine. *See* Exhibit G, Declaration of M. Rychener. In short, Officer Haanio neglects to inform the reviewing judge that the Rycheners are the users of the drug and that the informant is their supplier, not the other way around.

<u>Paragraph 4</u>:   Officer Haanio states that Fontes claims Rychener is a user/distributor of ice and he states that Det. Saldua corroborated this information.

However, Rychener has never met Det. Saldua and the affidavit does not state in what manner Det. Saldua "corroborates" that Rychener is a user/distributor of ice. It appears that the informant works for Det. Saldua, and the informant's information to Det. Saldua *is* Det. Saldua's so-called corroboration. It is a self-perpetuating cycle without benefit of extrinsic evidence. In addition, Officer Haanio's statement that he corroborated this information from "anonymous complaints" is useless. Information from anonymous complaints cannot suffice to support a search warrant, nor can it suffice to bolster already dubious information in warrant.

Paragraph 7: Rychener is a user, not a dealer. There is no extrinsic information provided to corroborate the informant's information that Rychener is a dealer, except for the alleged "controlled buy." This will be discussed in Paragraph 10- 14.

Paragraph 8: In this paragraph, the informant claims Mr. Rychener keeps his narcotics in a small cookie can. This information also has no outside corroboration. The HCPD located no cookie can in the Rychener home during their dawn search. That is because there is no cookie can in the Rychener home. Either the informant made this information up, or he confused the Rychener household with one of the other households in Naalehu about which he provided information to Det. Saldua. Either way, the police went in without any extrinsic evidence, and no cookie can was located. The informant's information was false.

<u>Paragraphs 10 and 11</u>: In these paragraphs, Officer Haanio states he met with the informant at a pre-arranged location, and he and his mode of transportation were searched for narcotics. None were found. Officer Haanio maintained surveillance on the informant until he arrived at the Rychener's residence, and then followed him to a pre-arranged location. The informant turned over a small ziploc cellophane baggie containing ice.

What occurred within the home was not recorded, photographed or videotaped. No wire was worn. Hence, HCPD only has the informant's not-too-credible word that he actually obtained "ice" from Mr. Rychener. Based upon the map attached as Exhibit F, this Court can see that it would be difficult for HCPD to actually surveil the Rychener residence without being observed by Rychener or others in the small neighborhood. Moreover, the date and time of the surveillance are not noted. The amount of ice allegedly obtained is not noted, nor is any of this information included in the discovery provided to Rychener for his review prior to trial. No police reports have been provided to Rychener to prove the informant ever actually entered the Rychener residence and obtained methamphetamine there less than five days before the warrant was obtained and executed.

<u>Paragraphs 13 and 14</u>: These interesting paragraphs state that the informant "obtained" methamphetamine from Rychener in his home. This paragraph does not state that he "bought" methamphetamine, and in the supposed controlled buy, the HCPD did

12

not provide any money, marked or otherwise, to the informant for the controlled buy. This contrasts completely with the Roddy case, in which two marked twenty dollar bills were allegedly given to Roddy for "ice," and the verb used in the affidavit to describe the Roddy-transaction was "purchased" as opposed to "obtained." *See* Exhibit C.[3]

Paragraph 16: In this paragraph the informant describes Mr. Rychener's home, a place he had been dozens of times in the past years, and Det. Saldua confirms the address.

Based upon this affidavit, which recklessly omits the informant's long-standing relationship with Mr. and Mrs. Rychener as their personal supplier of methamphetamine; which omits the informant's long-time coveting of Mr. Rychener's wife; which omits the informant's thirteen misdemeanor convictions and his two recent felony arrests for methamphetamine and a taser assault on a drug dealer with whom he was having a conflict; which uses the word "obtained" in place of "purchase" to gloss over the fact that this was not a controlled buy at all; which describes a cookie can in the Rychener residence that is not and never has been in their residence; this affidavit was

---

[3] In the Roddy case, the serial numbers on two twenty dollar bills allegedly used by the informant to purchase methamphetamine from Roddy were carefully noted in the affidavit in support of the warrant. However, when the police conducted their four-home sweep on April 23, 2003, neither twenty dollar bill was found in the Roddy home. One was found in the Billman home; the other was found in the Cajugal residence. Hence, again, the credibility of the informant, if not the officers themselves, is in question.

used to obtain a warrant to search the home of Mr. and Mrs. Rychener and their five year old daughter at a little after 6:00 a.m. Wednesday morning, April 23, 2003.

In addition, this information was used to obtain a warrant for a "black fanny pack." Despite the fact that there is not one word in the affidavit in support of the warrant which discusses a black fanny pack, the judge nonetheless issued a separate warrant for a black fanny pack in the Rychener residence. However, just like the cookie can, there was no black fanny pack, no fanny pack of any color in the Rychener residence. Moreover, Mr. Rychener's parents and his wife have all submitted Declarations stating that not only has Mr. Rychener never owned a fanny pack, he would never own one as he considers them "gay." *See* Exhibit G. (The informant however does carry a black fanny pack.) Once again, this appears to be a situation in which the informant mixed up the Naalehu households in his mind, or made up information out of whole cloth.

Wherefore, for the above-stated reasons, and based upon the information provided herein and the Exhibits and Declarations attached hereto, Rychener respectfully submits a <u>Franks</u> hearing is required and is confident that upon completion of the hearing, the Court will invalidate the warrant and suppress the evidence seized by execution of said warrant. Rychener further moves to suppress all evidence seized from the blue backpack which was not the subject of a warrant. Mr. Rychener did not consent to the

search of the back pack and the government has provided no documents indicating he waived a warrant for it.

DATED: Honolulu, Hawaii, August 8, 2003.

PAMELA J. BYRNE
Attorney for Defendant
DOUGLAS RYCHENER