ORIGINAL

EDWARD H. KUBO, JR.          #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON            #4532
Chief, Violent Crimes

WES REBER PORTER
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:    wes.porter@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 12 2003

at ____ o'clock and ____ min. ____ M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII     CR 03-225

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>DOUGLAS E. RYCHENER,<br><br>        Defendant. | CR. NO. 03-00141 DAE<br><br>UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS; EXHIBIT "A" THROUGH "B"; DECLARATION OF WES REBER PORTER; CERTIFICATE OF SERVICE<br><br>Date: September 24, 2003<br>Time: 9:00 a.m.<br>Judge: Lloyd D. George |


UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS

27

**TABLE OF CONTENTS**

Pages

I.   BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . 4

III. FACTS RELEVANT TO SUPPRESSION MOTION . . . . . . . . . . . . 5

   A.   Facts Relating to Alleged False Statements . . . . . 5

   B.   Facts Relating to Alleged Omissions . . . . . . . . 7

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   A.   RYCHENER Failed to Demonstrate Intentionally
        or Recklessly False Statements
        Were in the Affidavit . . . . . . . . . . . . . . . 10

        1.   RYCHENER Has Failed to Demonstrate
             that Any Information in the Affidavit
             is False . . . . . . . . . . . . . . . . . . . 11

        2.   Items Not Recovered During
             the Search Does Not Equate to
             False Statements in the Affidavit . . . . . . 13

   B.   RYCHENER Failed to Demonstrate
        Deliberate and Material Omissions
        From the Affidavit . . . . . . . . . . . . . . . . 14

        1.   CI's Criminal History Not Related
             to Crimes of Dishonesty Need Not Be
             Included in Affidavit . . . . . . . . . . . . 14

        2.   The CI's Alleged Interest in
             RYCHENER's Wife Is Not Material . . . . . . . 16

   C.   With Redacting False Statements
        and Inserting Alleged Omissions,
        the Affidavit still Supports
        a Finding of Probable Cause . . . . . . . . . . . 17

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**CASES**                                                                       Pages

Franks v. Delaware, 438 U.S. 154 (1978) .................. Passim

United States v. Bennett, 219 F.3d 1117 (9th Cir. 2000) ...... 15

United States v. Hall, 113 F.3d 157 (9th Cir. 1997) .......... 14

United States v. Reeves, 210 F.3d 1041 (9th Cir. 2000) ....... 10

United States v. Stanert, 762 F.2d 775,
    amended by 769 F.2d 1410 (9th Cir. 1985) .................. 10

The United States herein opposes Defendant's Motion to Suppress. Based upon his Motion, he is not entitled to an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) (hereinafter a "Franks hearing"). First, Defendant Douglas RYCHENER's ("RYCHENER") motion failed to make a "substantial preliminary showing" that the government intentionally or recklessly included false statements or omitted potentially undermining information from the search warrant's supporting affidavit. Second, *assuming arguendo* that there were false statements included, RYCHENER failed to make a "substantial preliminary showing" that the alleged false statements and/or affirmative omissions were material to the determination of probable cause by the issuing judge. Accordingly, both RYCHENER's request for a Franks hearing and his motion to suppress must be DENIED.

I.   BACKGROUND FACTS

On April 23, 2003, RYCHENER's residence was searched pursuant to a State of Hawaii search warrant, signed on April 22, 2003 by the Hawaii State judge presiding in the District Court of the Third Circuit, State of Hawaii. Hawaii County Police Department ("HCPD") executed the search warrant and recovered, in a cabinet within a locked workshop area beneath the residence, a Ruger, model 10/22, .22 caliber semiautomatic rifle, bearing Serial Number 231-79542 ("Ruger rifle"). Next to the Ruger

rifle, HCPD recovered a compatible, .22 caliber rifle magazine, which contained eighteen (18) .22 caliber cartridges. HCPD also discovered during the search that RYCHENER had a key in his possession that opened the padlock on the hasp that secured the workshop area door that led to the cabinet and the Ruger rifle.

HCPD further recovered an "East Sport" brand, dark blue, soft sided back pack ("back pack") located within the residence. HCPD recovered from the back pack the following items: (1) RYCHENER's State of Hawaii Driver's license; (2) an unloaded .22 caliber rifle magazine, that was also compatible with the Ruger rifle; (3) several mini-ziplock bags with crystalline residue (presumptively tested positive for methamphetamine); and (4) drug paraphernalia. RYCHENER identified and claimed ownership of the back pack.

RYCHENER has been a convicted felon since January 28, 1991 and, thus, a prohibited person as of the date of his possession of the Ruger rifle. At the time, RYCHENER had eight prior felony convictions in the State of Hawaii, including Promoting Marijuana 1, Ownership/Possession of Prohibited Firearm (twice), Prohibited Place to Keep Firearm (twice), Prohibited Acts Related to Drug Paraphernalia (twice), and Promoting Dangerous Drugs 3. See Exhibit "B" attached hereto. Lastly, the Ruger rifle was manufactured in either Connecticut, New Hampshire

or Arizona and was recovered on the Big Island of Hawaii; thus, RYCHENER's possession of it affected interstate commerce.

II. PROCEDURAL HISTORY

On April 24, 2003, based upon the facts set out above, a Criminal Complaint was filed against RYCHENER charging him with being a felon in possession of a firearm, to wit: the Ruger rifle. On April 28, 2003, RYCHENER had his initial appearance before a magistrate judge after being arrested on the warrant derived from the Criminal Complaint. Based upon his criminal history and the facts of the case, RYCHENER was order detained without bail after a detention hearing held on May 1, 2003.

A federal grand jury then indicted RYCHENER, on May 7, 2003, in a one-count Indictment for being a felon in possession of a firearm, to wit: the Ruger rifle. On May 12, 2003, RYCHENER was arraigned and entered a not guilty plea to the Indictment. After one stipulated continuance, the matter is currently set for jury trial before Chief Judge David A. Ezra on October 28, 2003. On August 8, 2003, RYCHENER filed the instant Motion to Suppress seeking a <u>Franks</u> hearing[1] to challenge the validity of the State of Hawaii search warrant and suppress the Ruger rifle.

---

[1] As of the date of this filing, the parties have discussed bifurcating this matter to avoid bringing off-island witnesses to Oahu if, for the reasons argued herein, a <u>Franks</u> hearing is not necessary.

4

III. FACTS RELEVANT TO SUPPRESSION MOTION

    A.    Facts Relating to Alleged False Statements

As set out in **paragraph 1** of the affidavit[2], the affiant, HCPD Officer Stan Haanio ("Off. Haanio"), was temporarily assigned to the Kona Vice division for the purpose of concentrated efforts on increasing problems with "ice" in certain regions of the Big Island. As such, Off. Haanio worked closely with other law enforcement officers in Kona Vice, particularly HCPD Detective Ernest Saldua ("Det. Saldua"). As discussed below in reference to paragraph 4 in more detail, Det. Saldua was a focal point for much of the drug information in the Ka'u area as of April 2003.

As set out in **paragraph 2**, the confidential informant[3], Mr. Gerald Fontes ("CI"), provided "reliable information on at least six (6) occasions" to Off. Haanio. Off. Haanio states that he met with the CI on several occasions in April 2003. The CI provided information regarding both particular persons involved in the distribution of "ice" and particular places where "ice"

---

[2] For uniformity, the government will refer to the hand-written and circled numbers for the respective paragraphs of the search warrant affidavit, as indicated in Exhibit "B" attached to Defendant's Motion to Suppress.

[3] HCPD uses the term "confidential informant", as opposed to "civilian informant" or "undercover agent", to indicate someone who has provided information with a particular motive for doing so, such as mitigating or negating the consequences of his own contact with law enforcement.

5

was being sold. The CI's information included drug activities in several geographic areas of the Ka'u region of the Big Island, including Pahala, Waiohanu, and Ocean View, not just the finite area surrounding RYCHENER's residence.

Off. Haanio, using his training and experience in working with, and receiving information from, confidential informants, continuously sought corroboration for all of CI's information as it was received. Based upon historic information known to other Kona Vice law enforcement, cross-referencing information received from other informants, controlled buys conducted by CI, community outreach, countless civilian complaints of drug activity at specific locations, community policing efforts and other sources of information active at the time, Off. Haanio states, in paragraph 2, that CI provided reliable, verified information, conservatively, on **at least** six occasions.

As set out in **paragraph 4**, Off. Haanio corroborated CI's information regarding RYCHENER, specifically that RYCHENER distributes "ice", with Det. Saldua. As stated above, Det. Saldua was the focal point of much of the drug activity information in the Ka'u area in April 2003. Off. Haanio was able to corroborate CI's information with Det. Saldua, because Det. Saldua, with the benefit of his training and years of experience, also believed that RYCHENER distributed "ice" in the Ka'u area.

Det. Saldua reports that he was personally familiar with RYCHENER, independent of any information provided by CI. Det. Saldua is aware of RYCHENER's criminal history, which includes multiple drug and multiple firearm offenses. Det. Saldua was aware of some of the factual scenarios supporting RYCHENER's many prior arrests and convictions involving drugs and guns. Det. Saldua was aware of RYCHENER's associations with other drug dealers and other criminal activities on specific occasions. Lastly, Det. Saldua was aware of community outreach programs and civilian complaints regarding RYCHENER, his residence and the area surrounding his residence in general. Det. Saldua was able to "corroborate" CI's information for Off. Haanio because of this history with RYCHENER.

As set out in **paragraph 7**, CI stated that he bought drugs from RYCHENER while at RYCHENER's residence in excess of ten times. This information was corroborated, at least in part, by the fact that CI was able to buy "ice" from RYCHENER once while under HCPD surveillance, as described in paragraphs 10-14.

B.  Facts Relating to Alleged Omissions

Off. Haanio relates that he was familiar with **CI's criminal history**, which includes no felonies and fifteen (15) misdemeanor and traffic violations. See CI's criminal history, attached as Exhibit "A". Most of CI's criminal history consists of traffic offenses, such as driving without a licence, no

7

inspection sticker, no insurance and DUI (9 traffic offenses total), or contempt of court offenses (3 total).  Id.  None of CI's prior offenses and violations are, in any way, crimes of dishonesty.  Id.  CI does have a single, drug related misdemeanor conviction, promoting dangerous drugs 3.  Id.  The minor, possession offense is consistent with his status as a user and as someone who knows the drug dealers in the area.  HCPD routinely does not include a CI's misdemeanor convictions and traffic violations that do not involve crimes of dishonesty in an affidavit supporting a State of Hawaii search warrant.

RYCHENER argues that **information regarding CI's alleged feelings for his wife** was intentionally omitted from the affidavit.  Off. Haanio did not have specific information that, as alleged in RYCHENER's Motion, the CI was making "a play for" RYCHENER's wife.  Off. Haanio relates that CI told him that RYCHENER is such a heavy drug user and that he is extremely paranoid, particularly about his wife.  CI informed Off. Haanio that, because of RYCHENER's paranoia, RYCHENER believes that CI is interested in his wife.  CI stated, however, that he has no interest in RYCHENER's wife and that no such bias factored into the information he provided to HCPD.

8

IV. <u>ARGUMENT</u>

RYCHENER has moved to suppress the Ruger rifle recovered during a search of his residence pursuant to a State of Hawaii search warrant. Where a warranted search is at issue, there is a presumption of validity with respect to the affidavit supporting the search warrant. In the <u>Franks</u> case, the Supreme Court was explicit in articulating the defendant's burden of proof with respect to a suppression motion where there is a **<u>warranted</u> <u>search</u>**. <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). In seeking a <u>Franks</u> hearing, RYCHENER has the affirmative burden to prove that: (1) he is entitled to an evidentiary hearing on his motion; and (2) the affidavit supporting the search warrant for his residence was facially false. <u>See</u> <u>id.</u> at 156. Unless he can do so, this Honorable Court must summarily deny RYCHENER's suppression motion without an evidentiary hearing.

In only limited circumstances, a defendant challenging the veracity of statements in a supporting affidavit is entitled to an evidentiary hearing (a <u>Franks</u> hearing) to determine whether the warrant was issued in reliance on a deliberately or recklessly false affidavit. <u>Id.</u> A defendant is only entitled to such an evidentiary hearing if the defendant can make a **<u>substantial</u> <u>preliminary</u> <u>showing</u>** that, first, the affidavit contains intentionally or recklessly false statements or misleading omissions. <u>Id.</u> at 155-56. If a defendant has shown

9

affiant's deliberate or reckless disregard for the truth, then a defendant must make a **substantial preliminary showing** that, second, the affidavit cannot support a finding of probable cause without the allegedly false information. Id.; see also United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000); United States v. Stanert, 762 F.2d 775, 780-81, amended by 769 F.2d 1410 (9th Cir. 1985). Here, RYCHENER has failed to make the requisite substantial showing entitling him to a Franks hearing.

    A.    RYCHENER Failed to Demonstrate Intentionally or Recklessly False Statements Were in the Affidavit

As the Supreme Court held in Franks, the defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." Franks, 438 U.S. at 171. RYCHENER fails to allege that any specific portions of the warrant are false. Instead, he generally claims that all information provided by CI is false, despite the affiant's articulated corroboration. RYCHENER further speculates using hindsight based upon what was not recovered during the search itself. The Supreme Court clearly did not intend to grant an evidentiary hearing to every defendant that disagreed with the CI's information supporting an affidavit.

1.  RYCHENER Has Failed to Demonstrate that
    Any Information in the Affidavit is False

RYCHENER must demonstrate that the affidavit included intentionally or recklessly false statements, yet there is no showing that any of the information in the affidavit is false. For instance, RYCHENER contends that the affiant included the following false statement in paragraph 4 of the affidavit, that: "a male individual known to the informant as Douglas Rychener is a user/distributor of crystal methamphetamine "ice" in Naalehu." Id. Essentially, RYCHENER did not like CI identifying him as a drug dealer/user and has alleged the statement as false. The statement itself, however, is absolutely true.

The CI's information is based upon his personal knowledge and has been independently corroborated. First, as of the date of the affidavit, **RYCHENER was previously convicted of drug offenses**, including Promoting Marijuana 2 (punishing actual distribution or possession of distribution amounts of marijuana) and Promoting Dangerous Drug 3 (punishing possession of a dangerous drug in any amount). Second, as stated in paragraphs 10 through 14, **CI bought "ice" from RYCHENER** while under HCPD surveillance. Third, CI's information was corroborated by other credible information available to law enforcement at the time.

The affiant, Off. Haanio, corroborated CI's information regarding RYCHENER, specifically that RYCHENER distributes "ice", with Det. Saldua. As stated above, Det. Saldua was the focal

11

point of much of the drug activity information in the Ka'u area in April 2003. Off. Haanio was able to corroborate CI's information with Det. Saldua, because Det. Saldua, with the benefit of his training and years of experience, also believed that RYCHENER distributed "ice" in the Ka'u area.

Det. Saldua reported that he was personally familiar with RYCHENER, independent of any information provided by CI. Det. Saldua is aware of RYCHENER's criminal history, which includes multiple drug and multiple firearm offenses. Det. Saldua was aware of some of the factual scenarios supporting RYCHENER's many prior arrests and convictions involving drugs and guns. Det. Saldua was aware of RYCHENER's associations with other drug dealers and other criminal activities on specific occasions. Lastly, Det. Saldua was aware of community outreach programs and civilian complaints regarding RYCHENER, his residence and the area surrounding his residence in general. Det. Saldua was able to "corroborate" CI's information for Off. Haanio because of this history with RYCHENER.

RYCHENER may **disagree** with CI's characterization of him as a drug dealer. However, CI did, in fact, relay that characterization to the affiant. The affiant's statement, to wit: that CI relayed that RYCHENER was a drug dealer in Naalehu, is therefore true. The fact that CI informed the affiant of information, as set out in paragraph 4, is absolutely true.

12

As discussed above, also set out in paragraph 4, the fact that the affiant corroborated the information with Det. Saldua is absolutely true. The fact that the affiant corroborated CI's information with "anonymous complaints received of suspected drug activity occurring at RYCHENER's residence" is absolutely true. RYCHENER apparently either disfavors the manner in which the affiant corroborated CI's information or the manner in which the affiant described the corroboration in the affidavit; neither makes that information false.

Further, as stated in paragraph 7, the affiant relays that CI has purchased from RYCHENER in excess of ten times. That is what CI told Off. Haanio, the affiant. Again, information that is corroborated by RYCHENER's criminal history (Ex. B), the controlled buy (paragraphs 10-14), and other information available at the time.

     2.    Items Not Recovered During the Search Does Not Equate to False Statements in the Affidavit

Second, RYCHENER argues that, if certain information provided by CI was not corroborated by the search itself, then the information must be false. For instance, HCPD obtained a search warrant for a black fanny pack. RYCHENER contends that because a black fanny pack was not recovered from the residence, then CI's statement about the location of RYCHENER's drugs must be false. See Def. Mot. at 2. Similarly, RYCHENER argues that because there was no cookie can recovered from RYCHENER's

13

residence, then CI's information regarding where RYCHENER stores his drugs, as stated in paragraph 8, must be false. RYCHENER offers no authority for the proposition that, if information provided in the affidavit was not corroborated during the actual search itself, then the information must be false. The government could not possibly be held to such a standard. Accordingly, such statements included in the affidavit are not deemed as false for the purposes of a Franks analysis.

    B.    RYCHENER Failed to Demonstrate Deliberate and Material Omissions From the Affidavit

In addition to alleging false statements in the affidavit, RYCHENER alleges that two (2) principal omissions were deliberately made when drafting the affidavit. First, RYCHENER alleges that the affiant intentionally omitted CI's criminal history from the affidavit. Second, RYCHENER alleges that the affiant intentionally omitted the information related to the CI's alleged interest in RYCHENER's wife. Both omissions, however, were wholly immaterial to the CI's credibility and a finding of probable cause by the issuing judge.

        1.    CI's Criminal History Not Related to Crimes of Dishonesty Need Not Be Included in Affidavit

Only if an informant's criminal history **involving dishonesty** renders his/her statements unworthy of belief, probable cause must be analyzed without those statements. See United States v. Hall, 113 F.3d 157, 159 (9th Cir. 1997). The

14

Ninth Circuit has held that even the failure to include the CI's crimes of dishonesty in a search warrant is not fatal. See United States v. Bennett, 219 F.3d 1117, 1124-25 (9th Cir. 2000). In Bennett, the government omitted from the affidavit information about the informant perjuring himself, lying, and failing to pay income taxes and the Ninth Circuit held that the omissions, while reckless, were not material to a finding of probable cause. Id. at 1124. Here, the affiant did not include CI's criminal history because there was nothing therein bearing on CI's credibility.

Off. Haanio relates that he was familiar with CI's criminal history, which includes no felonies and fifteen (15) misdemeanor and traffic violations. See CI's criminal history, attached as Exhibit "A". Most of CI's criminal history consists of traffic offenses, such as driving without a licence, no inspection sticker, no insurance and DUI (9 traffic offenses total), or contempt of court offenses (3 total). Id. None of CI's prior offenses and violations are, in any way, crimes of dishonesty. Id. CI does have a single, drug related misdemeanor conviction, Promoting Dangerous Drugs 3. Id.

The minor, drug possession offense is consistent with CI's status as a user and as someone who knows the drug dealers in the area. Further, the affiant states that HCPD routinely does not include a CI's misdemeanor convictions and traffic violations that do not involve crimes of dishonesty in an

15

affidavit supporting a State of Hawaii search warrant. Accordingly, even if included in the affidavit, CI's criminal history would not impact his credibility and would not affect the issuing judge's finding of probable cause.

      2.    The CI's Alleged Interest in RYCHENER's Wife Is Not Material

RYCHENER argues that information regarding CI's alleged feelings for his wife were intentionally omitted from the affidavit. First, the affiant did not have specific information about CI's alleged interest in RYCHENER's wife, so it could not have been intentionally omitted. Second, even if included in the affidavit, the potential bias would not impact CI's credibility to the degree where it would affect the issuing judge's finding of probable cause given the corroboration of CI's information set out in the affidavit.

Off. Haanio did not have specific information that, as alleged in RYCHENER's Motion, the CI was making "a play for" RYCHENER's wife. Off. Haanio relates that CI told him that RYCHENER is such a heavy drug user that he is extremely paranoid, particularly about his wife. CI informed Off. Haanio that **RYCHENER believes** that CI has an interest in RYCHENER's wife. CI stated, however, that he has no interest in RYCHENER's wife and that no such bias factored into the information he provided to HCPD. Accordingly, the alleged omission regarding RYCHENER's wife is inconsequential in a Franks analysis.

16

    C.    With Redacting False Statements and Inserting Alleged Omissions, the Affidavit still Supports a Finding of Probable Cause

As discussed above, RYCHENER has failed to demonstrate that any of the statements included in the affidavit were false. RYCHENER cannot possibly carry his burden that alleged false statements were intentionally or recklessly inserted into the affidavit. Similarly, RYCHENER cannot demonstrate that the alleged omissions were intentional or material. The second prong of the Franks analysis requires a defendant to demonstrate that, after (1) taking the alleged false statements out and (2) inserting the alleged, material omissions in the affidavit, the affidavit lacks probable cause. Franks, 438 U.S. at 171-72. Without a "substantial preliminary showing" that the a reasonable issuing judge would not find probable cause, RYCHENER is still not entitled to a Franks hearing. Id.

*Assuming arguendo*, however, that CI's conclusory statements, such as CI's statement that RYCHENER is a drug distributor, are excluded from the affidavit as intentional or reckless false statements. Further, *assuming arguendo* the two alleged omissions are included in the affidavit. "If, when material that is subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 171-72.

17

Here, the affidavit still supports the finding of probable cause by the issuing State of Hawaii judge. Simply stated, none of RYCHENER's arguments, even if taken to be true, would have any impact on the judge's finding of probable cause to search RYCHENER's residence. Without the conclusions of CI, the affidavit would still contain CI's personal history of buying drugs from RYCHENER, including the one controlled buy observed by HCPD. The fact that RYCHENER deals drugs would still be corroborated by Det. Saldua and civilian complaints. Similarly, the alleged omissions have nothing to do with a finding of probable cause. Accordingly, by any analysis, RYCHENER is not entitled to a <u>Franks</u> hearing because he has not carried his burden of a "substantial preliminary showing."

V.  CONCLUSION

Based on the foregoing reasons, RYCHENER's request for an evidentiary hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) must be DENIED for lack of a "substantial preliminary showing." Accordingly, RYCHENER's Motion to Suppress must be summarily DENIED without a hearing.

DATED: September 12, 2003, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By _____
WES REBER PORTER
Assistant U.S. Attorney

18